# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| MAURICE WITHERSPOON | * | |
| Plaintiff | * | |
| v | * | Civil Action No. PJM-09-2370 |
| GARY MAYNARD, J. MICHAEL STOUFFER, | * | |
| SHELTON RICHARDSON, and BRUCE D. ROBERTS | * | |
| Defendants | * | |

\*\*\*

## MEMORANDUM OPINION

Pending are Defendants' Motions to Dismiss or for Summary Judgment. Papers No. 12 and 18. Plaintiff opposes the motions. Papers No. 14 and 23. Also pending is Plaintiff's Declaration for Entry of Default. Paper No. 21. Upon review of the papers filed, the Court finds a hearing in this matter unnecessary. *See* Local Rule 105.6 (D. Md. 2009).

## Background

In July of 2008, Plaintiff, a Maryland Division of Correction (DOC) inmate, was transferred with 47 other Maryland inmates pursuant to an Intergovernmental Agreement to Leavenworth Detention Center in Kansas. Paper No. 1 at p. 3. The agreement permitted the transfer of Maryland inmates into federal custody and to the custody of Corrections Corporation of America (CCA). For purposes of initial classification, Plaintiff states he was placed on "security detention" upon arrival in Kansas, but after three weeks was moved to general population with three other Maryland inmates. *Id*. at p. 4. Plaintiff claims he received a memo from Mr. Daniels outlining an operation plan entitled "Phase Plan for Maryland Prisoners" outlining how he and the other Maryland inmates would be classified and otherwise treated, as well as a plan for their eventual return to Maryland.

On October 23, 2008, Plaintiff states that two correctional officers at the Leavenworth Detention Center were assaulted, and all Maryland inmates were subsequently placed on segregation. Paper No. 1 at p. 5. Plaintiff claims he never received paperwork notifying him of the reason for his assignment to segregation, nor was he afforded an opportunity to "confront his accusers." He further asserts that Defendants arbitrarily and capriciously subjected him to severe and extraordinary circumstances of confinement despite their knowledge that not all Maryland inmates were involved in the assaults on the correctional officers. Plaintiff claims that Defendants Roberts and Richardson, along with Maryland DOC officials, Maynard and Stouffer, decided and agreed upon the perpetual segregation of Maryland prisoners. *Id* at p. 6. Plaintiff asserts that he was informed of this decision at the only segregation review hearing he was provided.

On April 15, 2009, Plaintiff was notified that out-of-cell recreation time would be shortened because of the need to establish alternate recreation scheduling for another housing unit. Plaintiff states this decision was the result of an arbitrary administrative decision made by Roberts. Prior to the decision regarding recreation time, the Maryland prisoners were provided with recreation cages that allowed for out-of-cell time. Plaintiff states that it was not until August 19, 2009, that new recreation cages were erected for the Maryland prisoners.

Plaintiff states that from October 23, 2008, to present he has informed Richardson of "the many violations and complaints." Plaintiff further states that Roberts interferes with grievance procedures as well as inmate mail. Plaintiff claims that the failure to provide him with periodic hearings related to his segregation confinement and denial of out-of-cell recreation constituted cruel and unusual punishment and violated due process. In addition, he claims his freedom of speech was violated when his mail was not properly handled.

## Standard of Review

Summary Judgment is governed by Fed. R. Civ. P. 56(c) which provides that:

> [Summary judgment] should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc*., 477 U. S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc*., 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to....the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc*., 290 F.3d 639, 644-45 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)). "The party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [its]

pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Rivanna Trawlers Unlimited v. Thompson Trawlers, Inc.*, 840 F.2d 236, 240 (4th Cir. 1988).

**Analysis**

1. <u>Maryland Defendants</u>

It is well established that the doctrine of respondeat superior does not apply in § 1983 claims. *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir.2004) (no respondeat superior liability under § 1983); *see also Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir.2001) (no respondeat superior liability in a *Bivens*[1] suit). Liability of supervisory officials "is not based on ordinary principles of respondeat superior, but rather is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) *citing Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984). Supervisory liability under § 1983 must be supported with evidence that: (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *See Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir.1994).

Plaintiff has pointed to no conduct on the part of Defendants Maynard and Stouffer that resulted in a constitutional injury. The existence of a contractual relationship between the Maryland DOC and authorities in Kansas does not impose liability on Maryland officials for

---

[1] *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).

4

custody determinations made by Kansas officials. Thus, Maynard and Stouffer are entitled to be dismissed from this case.

   2. Kansas Defendants

Defendants Richardson and Roberts assert that this Court does not have personal jurisdiction over them and the complaint should be dismissed on that basis. Alternatively, they assert the case should be transferred to Kansas for lack of proper venue.[2] Paper No. 12. Plaintiff asserts that jurisdiction with this Court is proper on the basis of the contract permitting the Correctional Corporation of America to take custody of Maryland inmates. Paper No. 14.

Personal jurisdiction may be exercised by a federal court over a defendant in the manner provided by state law. *See* Fed. R. Civ. Proc. 4(k)(1)(A); *see also ESAB Group, Inc. v. Centricut, Inc*., 126 F.3d 617, 622 (4th Cir.1997). It is undisputed that Richardson and Roberts are nonresident defendants over whom personal jurisdiction may be asserted if two conditions are satisfied. First, the exercise of jurisdiction must be authorized under Maryland's long-arm statute; and second, the exercise of jurisdiction must comport with the due process requirements of the Fourteenth Amendment. *See Carefirst of Maryland v. Carefirst Pregnancy Centers*, 334 F. 3d 390, 396 (4th Cir. 2003). "Maryland courts have consistently held that the state's long arm statute is coextensive with the limits of personal jurisdiction set by the due process clause of the Constitution." *Id.*, *citing Mohamed v. Michael*, 279 Md. 653, 657, 370 A. 2d 551, 553 (1977); *see also* Md. Cts and Jud. Proc, Code Ann. §6-103. Personal jurisdiction does not violate due process considerations if the nonresident defendant has "minimum contacts" with the forum state

---

[2] Under 28 U.S.C. § 1391(b), a civil action that is not founded on diversity of citizenship may be brought only in the judicial district where any of the defendants reside, if all defendants reside in the same State or a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, except as otherwise provided by law. Richardson and Roberts reside in Kansas and the conduct at issue occurred in Kansas.

5

which provide the basis for the suit. *See International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

Jurisdiction over Defendants exists if this Court concludes that their contact with the state of Maryland has been "continuous and systematic," *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F. 3d 707, 712 (4th Cir. 2002), or if Defendants' contacts with Maryland form the basis for the suit. Put another way, if Defendants' contacts with Maryland do not form the basis of the claim against them, then their continuous and systematic, but unrelated contacts with Maryland is sufficient to establish general jurisdiction. *See Carefirst*, 334 F. 3d at 397. Considerations for determining specific jurisdiction are: "(1) the extent to which the defendant has purposefully availed itself of the privilege of conducting activities in the state; (2) whether the plaintiff's claims arise out of those activities directed at the state; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *Id., citing ALS Scan*, 293 F. 3d at 711-712.

Here, the contract at issue was made between Maryland and the federal government for transfer of Maryland prisoners to federal custody and thereafter to a Correctional Corporation of America facility located in Kansas.[3] Paper No. 12 at pp. 1—2. The conduct giving rise to the claims asserted occurred in Kansas; the actions taken to manage the Kansas prison are not activities directed in Maryland, the forum state. Furthermore, Defendants' tangential contact with Maryland cannot be characterized as continuous and systematic, as "evidence of a single, short-term contractual relationship does not rise to the level of 'continuous and systematic'

---

[3] The purpose of the contract made between the Office of Federal Detention Trustee, United States Marshals Service, and the Maryland Department of Public Safety and Correctional Services, was to make more room at the Maryland Correctional Adjustment Center for federal detainees. To implement the plan the Maryland inmates were transferred to the custody of the federal government which would be responsible for the care of the inmates. Under the Inter-Governmental Services Agreement, the Office of Federal Detention Trustee modified its contract with Correctional Corporation of America to house sentenced prisoners, who had been transferred to federal custody, in its Detention Center located in Leavenworth, Kansas. Paper No. 12 at Ex. 1 and 2.

contact." *Saudi v. Northrop Grumman Corp.*, 427 F.3d 271, 276 (4th Cir. 2005). The claims as to Richardson and Roberts shall therefore be dismissed without prejudice for lack of personal jurisdiction and Plaintiff's Declaration for Default Judgment will be denied.

A separate Order follows.

June 22, 2010

/s/
PETER J. MESSITTE
UNITED STATES DISTRICT JUDGE

7